JUDGE COTE

05 CV 9132

FILE COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

PEOPLE OF THE STATE OF NEW YORK, by                      :
ELIOT SPITZER, ATTORNEY GENERAL OF THE                   :
STATE OF NEW YORK,                                       :       Civ. ___ ( )
                                                         :
                                                         :       RECEIVED
                            Plaintiffs,                  :       OCT 2 6 2005
                                                         :       U.S.D.C. S.D. N.Y.
            -against-                                    :       CASHIERS
                                                         :       **COMPLAINT AND**
JOHN CAIN and LUIS MENCHACA,                             :       **JURY DEMAND**
                                                         :
                                                         :
                            Defendants.                  :

------------------------------------------------------------------------ X

          The People of the State of New York, by and through their attorney, Eliot Spitzer,

Attorney General of the State of New York, as and for their complaint, allege, upon information

and belief, as follows:

## PRELIMINARY STATEMENT

          1.      This is an action for injunctive relief and damages pursuant to the Freedom of

Access to Clinic Entrances Act, 18 U.S.C. § 248 (FACE), and the New York Clinic Access Act,

N.Y. Civ. Rights Law § 79-m (Clinic Access Act), together with other supplemental state law

claims, brought to prevent violent, obstructive and threatening activity that defendants

persistently conduct at the Margaret Sanger Center, Planned Parenthood of New York City's

reproductive health clinic located at 26 Bleecker Street, New York (Sanger Center or Center).

Unless enjoined, this activity presents a grave risk of irreparable harm to the legal rights and

health and safety of patients seeking and Center staff providing reproductive health care at the

Center, and threatens to irreparably harm the State's interests in protecting the public health,

1

ensuring safety on public streets and sidewalks, and preserving local residents' rights to peaceful enjoyment of their homes and neighborhood.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to adjudicate plaintiffs' state law claims.

3.      Venue lies in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims set forth herein have occurred and will occur in this district.

## PARTIES

4.      Plaintiffs, the People of the State of New York, are represented by their chief legal officer, Eliot Spitzer, Attorney General of the State of New York.  Pursuant to FACE and the Clinic Access Act, the Attorney General is authorized to commence a civil action where, as here, the Attorney General has reasonable cause to believe that persons within the State of New York may be injured by conduct that constitutes a violation of those laws.  Further, pursuant to New York Executive Law § 63, as well as the Attorney General's inherent *parens patriae* authority, the Attorney General is authorized to commence legal actions to enjoin repeated or persistent violations of the laws of the State of New York, and to enjoin public nuisances.

5.      Defendant Luis Menchaca resides in New York, New York and on a regular and continuous basis engages in obstructive, intimidating, dangerous, and harassing activity at the Sanger Center located in Manhattan.  Menchaca was arrested in July 2005 and is charged with harassment of a volunteer at the Sanger Center, obstructing access to patients and staff at a reproductive health clinic, and disorderly conduct.  In 2002, he was convicted of obstructing

2

access to a reproductive health clinic in Buffalo, New York after invading a clinic waiting room with two other individuals, and served thirty days in jail. Further, Menchaca is subject to at least two federal court injunctions relating to his obstruction of access to reproductive health facilities. In 1996, a federal court issued an injunction against Menchaca for his illegal, obstructive activities at a reproductive health facility in Dobbs Ferry, New York. Similarly, in 1998, a federal court issued an injunction for his involvement in a series of illegal clinic blockades of a reproductive health clinic located in Englewood, New Jersey, and ordered that he pay $15,000 in penalties for his activities there, more than any other protester subject to the injunction. Upon information and belief, Menchaca has been arrested for a range of illegal activities at reproductive health clinics numerous other times, including two times with James Kopp, the admitted killer of Dr. Bernard Slepian.

6.       Defendant John Cain resides in the Bronx, New York and on a regular and continuous basis engages in obstructive, intimidating, dangerous, and harassing activity at reproductive health facilities in New York City, including at the Sanger Center. Cain was arrested in November 2003 for obstructing access to patients and staff at a reproductive health clinic in midtown Manhattan.

## FACTUAL ALLEGATIONS

7.       Defendants Cain and Menchaca regularly engage in unlawful activities at the Sanger Center. This conduct has taken place over the course of at least two years, but has only more recently increased in frequency and intensity. Specifically, defendants on a regular and continuous basis have engaged in acts of force against patients and healthcare providers. They

3

also routinely physically obstruct ingress and egress from the Center; make ingress and egress

unreasonably difficult and dangerous; threaten, intimidate, and harasses the staff, volunteer

escorts (collectively, staff) and patients of the Center; and threaten the public health and safety,

and interfere with the provision of medical services.

8.      Defendants have been arrested for their illegal conduct at reproductive health care

facilities in New York, but such arrests have not deterred them from continuing their activities.

9.      Most recently, on or about July, 2005, defendant Menchaca was arrested in front

of the Center for intentionally jabbing a volunteer escort numerous times with a large anti-

abortion sign and was charged with harassment of the escort, interference with access to a

reproductive health center and disorderly conduct.  Similarly, on or about November, 2003,

defendant Cain was arrested at another New York City reproductive health facility and charged

with obstructing access to reproductive health services.  The court issued an order of protection

on behalf of the facility as against Cain.

10.      Over the past year, defendants' conduct has become increasingly violent,

dangerous, and obstructive.  In an effort to intimidate, defendants have pushed, shoved, bumped,

stepped on and/or engaged in other physical contact with clinic staff, escorts and patients, and

made their access to and egress from the Center unreasonably difficult.

11.      Defendants routinely scream at clinic staff, escorts and patients, and directly into

the Center's entrance, and have threatened clinic staff and escorts with bodily harm.  Defendants'

constant screaming interferes with patient health as well as local residents' right to enjoyment of

their neighborhood and use of the public streets.

4

**The Sanger Center**

12.     The Center, located in a residential neighborhood at the corner of Bleecker and

Mott Streets (a map of the Center's location is attached as Exhibit A), provides comprehensive

gynecological services, from routine check-ups, birth control, pregnancy care and testing

(cervical cancer screening, for example) to abortions.  The Center also provides STD and HIV

testing, counseling, and treatment.

13.     The Center's entrance is directly at the edge of a public sidewalk.  The Center's

entrance door is approximately 30  feet south of the edge of Bleecker Street and opens directly

onto Mott Street.   The recovery and discharge area of the Center and additional waiting areas are

directly above Mott Street on the second floor.

14.     Across the from the Center on Bleecker Street are a number of low-rise,

residential apartment buildings.

**Defendants' Acts of Force and Threats of Force**

15.     Through force and threats of force, defendants intimidate and interfere with and

attempt to intimidate and interfere with individuals who seek to obtain or provide reproductive

health services at the Center.

16.     In July 2005,  Menchaca jabbed  a volunteer escort with a thick plastic sign at

least six times when the escort was on the corner near to the Center trying to direct women to the

Center's entrance door.

17.     In or about April 2005,  Menchaca approached a volunteer escort and intentionally

pressed his body into the escort, screaming "How can you do what you do!" and "We're not

going to take this anymore!"  After the escort told Menchaca that he needed to move away,

Menchaca screamed back, "You need to move away!" and intentionally pushed the escort again with his body.

18.     In or about March 2005, Menchaca encouraged two men on Mott Street directly across from the Center's entrance to throw small rocks at the volunteer escorts on duty.   As the men were throwing the rocks, Cain, on the other side of the street near the Center's entrance, remarked to an escort that "you're lucky they're not hitting you in the head.  You better watch out for next time."  Cain then threatened a volunteer escort as he passed her on Mott Street that he was going to "bash [her] f---ing head in."

19.     In that same month, Cain exploded in anger at an escort who was assisting patients coming to the Center, yelling "Stay out of my way!  This is your last warning!"  When the police came on that day in response to a noise complaint, defendants were quiet for the 45 minutes that the police were there.  After the police left, the yelling at the same escort began again: "May what happens in there happen to you!"  "May you burn in hell!"

20.     In or about January 2005, defendant Menchaca intentionally pushed a volunteer escort who was removing anti-abortion posters from where they were leaning on the Mott Street side of the Center building.

21.     In or about November 2004, defendant Cain deliberately slammed into a volunteer escort as she opened the Center's door for a patient.

22.     In or about January 2005, when an escort accidentally stepped in the path of Cain, he threatened "I will knock your teeth out if you get in our way again!"  A few months earlier, Cain had threatened to "knock" the same escort "in [her] head" and then had approached the escort closely while stating, "Be careful, we're watching you; get in my way, you'll live to regret

it."

23.     Just two weeks ago, defendants threatened the same escort, warning her that she

"better not go home alone!" "We've got our eyes on you!"

24.     Some months after a bomb threat was made to the Center in July, 2004, Cain said

to one of the escorts,"Someone will set off a bomb here someday!"  On that same day he

threatened that same escort, saying "you'll be lucky if you're alive next week."  After bumping

into that escort because Cain was so near to the Center entrance, Cain threatened, "That'll be the

last thing you do if you don't watch out!"

25.     In the fall of 2004, Cain threatened another escort, saying "I'd like to do to you

what they do to babies," and  "I'd like to stick a coat hanger in you."

26.     Another escort feared bodily harm when Cain remarked to her that "Your day is

coming!"

27.     By these acts of force and threats of force, defendants' conduct has injured and/or

intimidated and continues to injure and/or intimidate clinic staff and patients and/or interfere

with the ability of staff to provide, and/or clients to obtain, reproductive health services.

28.     Defendants have engaged in the conduct described above with intent to injure,

intimidate and/or interfere with the ability of the Center and its staff to provide reproductive

health services and with the ability of the Center's patients to obtain those services.  Their

conduct has placed staff in reasonable apprehension of bodily harm.

### Defendants' Obstruction of the Sidewalk Outside the Center

29.     All patients and staff gain access to the Center by walking on the public sidewalk

on Mott Street to the Center's entrance.  Patients approach the Center from a number of different

7

routes.  Most often, they travel on foot from Mulberry Street where there is a subway exit.

Coming from Mulberry Street, the patients walk east on Bleecker Street for approximately

200 feet, cross Mott Street, and then make a right at Mott Street.  The Center's entrance door on

Mott Street is approximately 30 feet from the edge of Bleecker Street.

      30.     Other patients travels to the Center by car -- either by private vehicle or taxi.  Cars

generally pull up either on the Bleecker Street side or directly in front of the Center; patients exit

the vehicles and walk to the Center's entrance.

      31.     Typically, when a patient approaches from near the Bleecker Street uptown

subway (at the corner of Bleecker and Mulberry Streets), at least one of the defendants walks

within inches of the patient and places his arm across her to try to force her to accept a pamphlet.

As the patient crosses over Mott Street to the sidewalk in front of the Center, the other defendant

meets her and also tries to hand her literature.  Defendants physically obstruct access to the

Center when they surround the patient or stand in front of her -- sometimes on the sidewalk,

sometimes in the middle of the crosswalk --  making it unreasonably difficult and/or hazardous

for her to move toward the Center.

      32.     Defendants regularly physically obstruct access to the Center by blocking the

clinic entrance door directly or getting so close to the door that patients and staff must maneuver

around them.  They also block access by crowding patients on the sidewalk in front of the Center

while yelling at them.  Cain and Menchaca walk either side-by-side or directly on patients' and

staff's heels while yelling at them, and refuse to move away when asked, thereby making ingress

to and egress from the Center unreasonably difficult and/or hazardous.  Specifically, as patients

walk toward the Center on Bleecker Street from the west corner to the east corner of Mott Street,

defendants hold literature with their arms outstretched in front of the patients.  Frequently,

defendants converge upon patients as they are walking through the crosswalk on Mott Street

where cars are turning from Bleecker Street.  Defendants continue walking so closely behind

that, when the patients or staff stop at the door, defendants bump into them, all the while

screaming that patients should not "kill their babies," or that the staff should not "murder

babies."

33.     Cain and Menchaca also physically obstruct patients who arrive by car from

entering the Center by (1) standing in front of car doors to keep the doors from opening when the

patients attempt to exit; and (2) crowding the patients as they walk toward the Center after the

patients succeed in exiting their cars.

34.     In addition, defendants chase and follow patients who are entering and leaving the

Center, yell at them, and attempt to force pamphlets into their hands.  Even when patients

express the desire to be left alone, defendants continue to follow them and scream at them.

35.     For example, in or about March 2005, a patient arrived at the Center by taxi.  The

taxi pulled up to the entrance of the Center on Mott Street and both defendants blocked the

patient from exiting the cab by standing directly in her way when she opened the door.

36.     Similarly, in or about June 2005, a patient was crossing from the west corner of

Mott Street to the east corner.  As she was approaching the east corner -- in the crosswalk --

Cain stood directly in front of her, within only a couple of inches, and would not let her pass.

He attempted to give her literature which the patient declined.  Once she rejected the materials,

Cain began to yell in a booming voice, "Think about the baby!" and  "Abortion is murder!" The

patient had to step back to get away from him.  It was only after the patient told him that she was

9

not visiting the Center to terminate a pregnancy that he moved out of the way.

37.     As a result of defendants' obstructive behavior, patients often arrive at the Center frightened and upset. Staff members often spend time calming patients down before they are able to address the reason for the clinic visit.

38.     Some patients are so intimidated by what they observe and upset by defendants' conduct that they turn around and do not proceed to the Center entrance.

39.     By these acts of physical obstruction, defendants' conduct has interfered with and continues to interfere with the ability of staff to provide, and/or clients to obtain, reproductive health services.

40.     Defendants have engaged and continue to engage in the conduct described above with intent to injure, intimidate and/or interfere with the ability of the Center and its staff to provide reproductive health services and/or with the ability of the Center's patients to obtain those services.

### Defendants' Interference with the Public's Right to Medical Care

41.     Defendants' obstruction, acts of force and threats of force, and their loud shouting have interfered with the public's right to medical care.

42.     Because of defendants' conduct, many patients arrive at the Center in an emotional state, and are visibly upset and anxious, and some who are frightened by defendants' conduct do not come at all. Patients who do come to the Center therefore require more counseling and are more difficult to counsel  than on other days when defendants are not present.

43.     Defendants' screaming at high volume also interferes with the medical care being provided at the Center. The continuous noise can be heard inside the Center and particularly in

the recovery rooms, where nurses give patients post-operative care and discharge instructions. The shouting distracts nurses from giving the instructions and patients from listening to them, and patients are unable to absorb the critical medical information being communicated by the staff.

### Defendants' Interference with Local Residents' Right to Enjoyment of Their Homes and Neighborhood

44.     Defendants' conduct, particularly their loud and threatening shouting, interferes with local residents' right to enjoyment of their homes.  By yelling loudly early on Saturday starting at 7:00 a.m (and since August, 2005, on Thursday mornings as well), waking up residents in buildings near the Center, and shouting in an aggressive and intimidating manner at neighbors who complain about the noise, defendants substantially and unreasonably disturb the peace of the entire neighborhood.

45.     Every Saturday morning, defendants' screaming ("Don't kill the babies!" "Murderer!") wakes up local residents at a time when they normally would be sleeping – even, in one instance, when a resident's bedroom is in the back of the apartment.

46.     When approached by neighbors who complain about being awakened, defendants only exacerbate their conduct.  For example, when one neighborhood resident complained that defendants' yelling was keeping his guests, including a small baby, from sleeping, one defendant "cornered [the resident], coming within four inches of [his] face, shook his fist at [him], and screamed in his face."

47.     When another community resident "decided to ask [defendants] to lower their voices because they were disturbing the neighborhood[, t]hey reacted by yelling in [her] face:

'Murderers!  We don't care about the neighborhood!'"

48.     The screaming and confrontations have in effect made the area around the Sanger

Center off-limits every Saturday morning (and more recently, every Thursday morning) for many

other community residents who feel intimidated by the aggressive shouting, and - - as a result - -

alter their walking patterns to avoid defendants.  By refusing to moderate their conduct in

response to the complaints of residents, defendants effectively have wrested control over an

entire section of the neighborhood.

### Defendants' Ongoing and Continuing Illegal Actions

49.     By engaging in the above conduct, Cain and Menchaca repeatedly interfere with

the provision of reproductive health care at the Center, using physical obstruction, acts of force,

threats of force, and loud shouting in an attempt to intimidate and interfere with individuals who

obtain, seek to obtain, provide, or seek to provide reproductive health care.  Defendants have

caused and will continue to cause patients, staff, and volunteer escorts at the Center irreparable

harm and emotional distress by making access to the Center unreasonably difficult.  Defendants'

conduct is ongoing and likely to continue.

50.     Through the above conduct, defendants repeatedly interfere with the provision of

medical care inside the Center, as well as the enjoyment of local residents of their neighborhood,

thereby creating a public nuisance at and around the Center.

51.     Defendants' violations of law have been and continue to be willful and malicious

and in reckless and wanton disregard of plaintiffs' rights under the law.

52.     Plaintiffs have no adequate remedy at law.

### COUNT I -- Freedom of Access to

12

## Clinic Entrances Act, 18 U.S.C. § 248

53.     Under FACE, it is illegal to, by force, threat of force or physical obstruction, intend

to intimidate and/or interfere with or attempt to intimidate, and/or interfere with a person because

that person has obtained or provided, or seeks to obtain or provide, reproductive health services.

54.     Defendants' conduct of engaging in physical obstruction, acts of force, threats of

force, and shouting at high volume is intended to intimidate and/or interfere with and/or constitutes

an attempt to intimidate, and/or interfere with a person because that person has obtained or provided,

or seeks to obtain or provide, reproductive health services.

55.     Defendants therefore repeatedly have violated FACE.

## COUNT II -- Clinic Access Act,
## N.Y. Civ. Rights Law § 79-m

56.     Under the Clinic Access Act, it is illegal to, by force, threat of force or physical

obstruction,  intend to intimidate and/or interfere with or attempt to intimidate, and/or interfere with

a person because that person has obtained or provided, or seeks to obtain or provide, reproductive

health services.

57.     Defendants' conduct of engaging in physical obstruction, acts of force, threats of

force, and shouting at high volume is intended to intimidate and/or interfere with and/or constitutes

an attempt to intimidate, and/or interfere with a person because that person has obtained or provided,

or seeks to obtain or provide, reproductive health services.

58.     Defendants therefore repeatedly have violated the Clinic Access Act.

## COUNT III -- Public Nuisance

59.     A public nuisance is created by conduct that interferes with the public in its exercise

of common rights, including but not limited to conduct interfering with the public's access to medical care, enjoyment of the public's homes and neighborhoods, and the use of streets and sidewalks, which therefore endangers the health, safety and/or comfort of a considerable number of persons.

60.     Defendants' conduct has created a public nuisance because it interferes with and will continue to interfere with the public's access to medical care, the enjoyment of the public's homes and neighborhoods, and the use of the public of streets and sidewalks, and it therefore endangers the health, safety, and/or comfort of a considerable number of persons.

61.     Defendants' ongoing and repeated creation of a public nuisance has been, and will continue to be, willful and/or in reckless disregard of plaintiffs' rights under the law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray that this Court enter a judgment and order:

a)      declaring that defendants' actions as described above are in violation of FACE, the Clinic Access Act, and the state common law of public nuisance;

b)      preliminarily and permanently enjoining defendants from violating FACE, the Clinic Access Act, and the state common law of public nuisance, and ordering injunctive relief necessary and appropriate to remedy defendants' past violations of law and to ensure that defendants do not create a public nuisance or physically obstruct or use force or threaten to use force to injure, intimidate, and/or interfere with or attempt to injure, intimidate, and/or interfere with persons who are seeking to obtain or provide reproductive health care at the Center, such injunction to include a buffer zone around the Center;

c)      directing each defendant to pay statutory or compensatory damages for each

14

violation as authorized by FACE, 18 U.S.C. § 248(c)(3)(B);

   d)  directing each defendant to pay civil penalties as authorized by FACE, 18 U.S.C. § 248(c)(3)(B);

   e)  awarding punitive damages under New York State common law in an amount to be determined at trial;

   f)  awarding plaintiffs their reasonable costs and expenses incurred in the prosecution of this action;

   g)  retaining jurisdiction of this matter to ensure full, adequate, and effective implementation of the relief ordered by the Court; and

h)     awarding plaintiffs such additional relief as is just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: New York, New York
       October 26, 2005

ELIOT SPITZER
Attorney General of the State of New York
120 Broadway
New York, New York  10271
(212) 416-6280
fax (212) 416-8074

By: _____
    LISA LANDAU (LL-0519)
    Director, Reproductive Rights Unit
    Civil Rights Bureau

    DENNIS PARKER (DP-1531)
     Bureau Chief, Civil Rights Bureau
    ANNE PEARSON (AP-5698)
     Assistant Attorney General
     Civil Rights Bureau

16

EXHIBIT A